[No. B153382. Second Dist., Div. Two. Mar. 14, 2002.]

RICHARD I. FINE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PAUL DeFLORES et al., Real Parties in Interest.

654

---

**COUNSEL**

Richard I. Fine, in pro. per., for Petitioner.

Benton, Orr, Duval & Buckingham, Brenda L. McCormick, Carol A. Woo and Kevin M. McCormick for Respondent.

No appearance for Real Parties in Interest.

## OPINION

**BOREN, P. J.**—In this writ proceeding, petitioner Richard I. Fine, an attorney, seeks to have set aside an order of contempt issued by respondent Los Angeles County Superior Court, and arising out of the filing by Fine of a Code of Civil Procedure section 170.1[1] challenge against Commissioner Bruce E. Mitchell. We deny the petition for a writ.

### I. FACTUAL AND PROCEDURAL BACKGROUND

*Class Action Complaint.* On May 23, 1996, a class action was commenced by Fine on behalf of 19 representative plaintiffs against EHG National Health Services and others. The complaint alleged tort causes of action arising from medical examinations conducted by an imposter doctor on behalf of an insurance company. (*DeFlores v. EHG Nat. Health Services* (Oct. 17, 2000, B141231) [nonpub. opn.] (*DeFlores I*).)

*Stipulation Appointing Commissioner Mitchell.* The parties executed the following stipulation for the appointment of Commissioner Mitchell as temporary judge. "It is understood between the undersigned attorneys and parties that the below described matters in this case have been assigned to a Superior Court Commissioner for the County of Los Angeles, who is a member of the Bar of the State of California, and that said Commissioner's appointment as a Superior Court Commissioner is in accordance with Article 6, Section 22, of the Constitution of this State, and further, that said Commissioner has taken the oath of office as to all matters assigned. [¶] Pursuant to Article 6, Section 21, of the Constitution of this State, each of the parties litigant stipulates, and the Court thereupon orders, that Commissioner Bruce Mitchell is appointed and empowered to act in this case as a Temporary Judge for all pretrial proceedings, specifically including, without limitation, those matters assigned to Department 59 by the Superior Court's Local Rules, rules 2.5, 15.0, 15.1, 16.0, and 16.2. . . . [¶] Each of the parties litigant thereby waives any right they might otherwise have to hereafter withdraw this Stipulation to Commissioner Mitchell as Temporary Judge for the described proceedings. This Stipulation is binding upon all successor parties in interest, parties *in pro per* after withdrawal of counsel, and all successor counsel."

*Class Certification.* In February 1998, the trial court granted Fine's motion to certify a liability class and appointed Fine as class counsel for liability issues only, determining that numerous individual issues precluded certification of the damage claims. By virtue of being certified as class counsel,

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Fine became counsel for approximately 349 additional clients. (*DeFlores v. Superior Court* (Feb. 14, 2002, B147721) [nonpub. opn.] (*DeFlores II*).)

*Settlement Agreement.* In June 1999, the parties entered into a stipulation of settlement, which provided: "(1) for a global settlement, not only settling the claims of the class representatives on behalf of themselves and the class but also the individuals in the consolidated class; (2) for a total settlement of $9.2 million, $1.332 million of which was to be paid to some of the individual plaintiffs with the balance to be deposited into an interest bearing account for the class members; (3) that counsel for the representative plaintiffs and counsel for the individual plaintiffs would receive attorney fees of one-third of the recovered amount; (4) a method of distributing the settlement monies to the claimants in accordance with a 'Plan of Allocation' as provided by the court; and (5) for prompt application to the trial court for approval of the [s]tipulation and entry of a judgment consistent with it, the court retaining jurisdiction to implement and enforce the terms of the settlement." (*DeFlores I, supra*, B141231.)

*Settlement Approval.* On June 23, 1999, following a hearing before Commissioner Mitchell on the fairness of the stipulation, the court approved the settlement. About a week later, Commissioner Mitchell signed a document entitled "Stipulated Order for Entry of Judgment." The stipulated order approved all of the terms of the settlement, certified the class, dismissed the defendants and cross-defendants from the action, and provided that "[t]he Court shall retain jurisdiction over this matter to effectuate this Judgment, to supervise and approve the claims administration process, and to enforce the terms of the Stipulation." (*DeFlores I, supra*, B141231.)

*Claim Processing Phase.* After the stipulation of settlement was entered, the claim processing phase of the case began, during which it was to be determined how the settlement proceeds were to be allocated. (*DeFlores I, supra*, B141231.)

*Stay of Proceedings.* On December 13, 1999, the trial court, at the behest of Attorney Diane Goldman, halted the claims administration process because a disqualification statement had been filed by Fine against Commissioner Mitchell. Goldman represents a number of plaintiffs, and has the title "liaison counsel."

*Sanction Order.* On February 22, 2000, the trial court entered an order imposing sanctions against Fine pursuant to section 128.7. The order recounted the long history of Fine's persistent, and the trial court concluded inappropriate, efforts to obtain an advance of attorney fees from the settlement proceeds. The trial court refused to advance additional fees because of

the uncertainty as to the precise amount of attorney fees to which Fine would be ultimately entitled. (*DeFlores I, supra,* B141231.)

*Removal Order.* On March 6, 2000, the trial court entered an order removing Fine as class counsel. The court indicated that each class member would be permitted to select whom he or she desired to represent him or her, including Fine. (*DeFlores I, supra,* B141231.)

*Appeal of Sanction and Removal Orders.* On April 28, 2000, Paul DeFlores, on behalf of plaintiffs represented by Fine, appealed from the sanction order against Fine and the order removing him as class counsel. Fine was not a party to the appeal. (*DeFlores I, supra,* B141231.)

On October 17, 2000, we issued an opinion dismissing the appeal for lack of jurisdiction. As to the sanction order, we concluded that the appellants lacked standing to appeal, as Fine, alone, was entitled to challenge the sanction order. As to the removal order, we concluded that appellants were not adversely affected by the order and thus lacked standing to appeal it. In a footnote, we stated, "We note, however, from a careful review of the record that were we to reach the merits of appellants' claims regarding Fine's removal, we would conclude that the trial court possessed the authority to do so . . . and that the reasons for doing so, as set forth in the trial court's lengthy March 6, 2000 order, amply supported its exercise of discretion."[2] (*DeFlores I, supra,* B141231.)

*December 1, 2000 Status Conference.* On December 1, 2000, a status conference was conducted in the trial court before Commissioner Mitchell. On January 30, 2001, Fine and a number of plaintiffs, identified as "members of the settlement class that selected Richard I. Fine to represent them in the claims administration process," filed a notice of appeal "from the orders of December 1, 2000, including but not limited to (1) removing from the 'private judge' . . . the decision of the amount of money each claimant would receive in the claims administration process . . . ; (2) the removal of Richard I. Fine as counsel for all the members of the settlement class that selected Richard I. Fine to represent them individually in the claims administration process without notice; and (3) the order that the counsel instead of the 'private judge' determine the amount of monies that each claimant would receive in the claims administration process; amongst other orders that day." (*DeFlores II, supra,* B147721.)

*Fine's Disqualification Challenge.* On August 30, 2001, Fine filed and served on Commissioner Mitchell a disqualification challenge. Fine asserted

---

[2]Fine filed a petition for review in the California Supreme Court. The petition was denied in January 2001.

that the commissioner was disqualified to preside at any further proceedings because "he is biased and prejudiced [and] has abused and misused the judicial process by engaging in a concerted action with Diane Goldman, counsel for [certain plaintiffs] who opposed the class action, (1) by unlawfully delaying the claims administration process by stopping such on December 13, 1999 at the request of Ms. Goldman in violation of [section 170.4, subdivision (d)], (2) by soliciting and offering to pay Ms. Goldman from the Settlement Fund on April 14, 2001, to represent him in the present appeal of the December 1, 2000 Orders which Ms. Goldman is doing in conflict of the interests of her clients in having a private judge decide the value of their claims, (3) by allowing Ms. Goldman to interfere with the attorney client relations of Fine and his clients as admitted in the Declaration of Diane Goldman dated July 24, 2001, paragraph 9 p. 8 ln. 5-17, (4) by not punishing Ms. Goldman for placing her return address on the 'court notice' without permission thereby allowing claimants to believe she has a 'special' status in the case, (5) by not sanctioning Ms. Goldman for breaking the June 5, 2001 non solicitation order for writing the July 2, 2001 letter to Richard Bagdasarian, and [6] by hearing a motion for disqualification of Fine which duplicates the present appeal of the December 1, 2001 Orders brought by Ms. Goldman in violation of [section 916] while knowing that he is prohibited from hearing such." Fine, who signed the affidavit under penalty of perjury, asserted that he "first discovered these facts as a pattern on August 5, through August 30, 2001."

*Order of Contempt.* On September 24, 2001, Commissioner Mitchell issued an order and judgment of contempt against Fine based on the filing of the August 30, 2001 disqualification challenge.[3] It was noted that this was the ninth such challenge filed against Commissioner Mitchell by Fine in the

---

[3]On September 5, 2001, within 10 days of the date Fine filed his disqualification statement, Commissioner Mitchell filed an order striking the challenge. Attached to the order was Commissioner Mitchell's "verified answer" which contained the following language: "In the alternative, if it is later found that a legal basis for challenge is stated, then Commissioner Mitchell files the following verified answer." Fine claims that when Commissioner Mitchell issued the order of contempt on September 24, 2001, the commissioner "revoked the Order Striking the August 30, 2001 CCP 170.3 Objection (Ninth Challenge)." Fine argues that because the order striking the August 30, 2001 disqualification challenge was "revoked," Commissioner Mitchell's verified answer became operative, effective September 24, 2001, and because the commissioner's answer did not become effective until September 24, 2001, the answer was untimely. Fine concludes that since Commissioner Mitchell did not timely file his verified answer, the commissioner had no jurisdiction to enter the contempt order. The fact that Commissioner Mitchell struck Fine's disqualification statement as facially insufficient does not mean that Fine cannot be held in contempt for filing it. As for Fine's argument that the verified answer was untimely, the record makes clear that the verified answer was never intended to be filed—unless a court of review later determined that the disqualification challenge required that it be heard by a judge. Fine also argues that since Commissioner Mitchell answered the disqualification statement, the disqualification is still pending. Since

*DeFlores* matter, and that these challenges began when the commissioner set an order to show cause (OSC) in November 1999 to consider whether Fine should be removed as class counsel in one of six class actions Fine had pending before Commissioner Mitchell. The order found that the disqualification challenge was "false and meritless" and thus a "direct" contempt of court that could be punished summarily.

As to Commissioner Mitchell's authority to adjudicate the contempt, the order noted that pursuant to the first stipulation executed by the parties Commissioner Mitchell was appointed and empowered to act as a temporary judge "for all pretrial proceedings." The court concluded that "[*t*]*his litigation is still in pretrial proceedings.* The Court's files reflect the following: No trials have yet been held. The defendants entered into a global settlement, paid approximately $9 million into Court similar to an interpleader, and were dismissed. Now there are 494 plaintiffs who all have claims to that fund. None of those claims has received an individual final value, and if claims cannot be resolved by further settlement procedures then they will have to go to trial. None of the plaintiffs waived their right to a jury trial. Instead, because defendant [EHG National Health Services'] insurance policy was a 'burning limits' policy, being reduced by defense costs, all plaintiffs agreed that $9 million was fair as a global settlement, but that plaintiffs would litigate among themselves for a pro [rata] distribution. Some of the claims alleged are very serious, including one wrongful death claim, and may need to be tried. Because this litigation is still in pretrial proceedings, the Stipulations signed by attorney Fine apply with full force."

The stipulation contained within the stipulated order for entry of judgment signed by the parties in June 1999 was construed as follows: "Moreover, when the parties entered into their Stipulation of Settlement, and in their motion to certify a settlement class, they all agreed, including attorney Fine, that the same court that had conducted the previous proceedings—Commissioner Mitchell—would continue to preside over the settlement adjudication phase. This is consistent with the Superior Court's Local Rules on class actions."

As to whether an evidentiary hearing was required, the court noted that it had "considered carefully whether setting an OSC would be appropriate, and concluded that an OSC would be of no value. This is now attorney Fine's ninth meritless challenge for cause in this case. In responding to each prior challenge this Court has pointed out that the challenge was meritless, and has repeatedly cited legal authority to Fine that a false or meritless challenge

the answer was never filed, it cannot be deemed to be untimely. Nor can it be said that the disqualification challenge is pending.

for cause is contemptuous. Fully aware of the law, he continues to file such challenges. Further, when on past occasions this Court has disciplined attorney Fine he has typically retorted with further insolence and insults to the Court. The Court has no reasonable basis to believe that this instance would be any different—that attorney Fine has any genuine interest in learning why his actions are inappropriate, or offering any sincere explanation or apology."

According to the court, Fine's ninth challenge was contemptuous for two independent reasons: "First, the ninth challenge contained false, insulting, and scandalous allegations against Commissioner Mitchell, alleging judicial dishonesty or misconduct, unsupported by any facts," in violation of section 1209, subdivision (a)1. "Second, the ninth challenge, the last act in a two year pattern of false and meritless challenges for cause, tended to disrupt these judicial proceedings" in violation of section 1209, subdivision (a)1, 2.

In concluding that Fine filed the ninth disqualification challenge as a delaying tactic, the order set forth past acts on Fine's part, including the filing of numerous disqualification challenges in several other class actions pending before Commissioner Mitchell. It was noted that "[t]he Court of Appeal has summarily denied *every* petition for a writ which attorney Fine has filed concerning the denial of, or striking of, his various challenges." The court noted that "nine times in this case alone this Court has had to put aside other pressing business and responded, as a priority within the 10 days the law permits, to one insulting allegation after another. The filing of each challenge abated these proceedings as a matter of law until it was resolved. Attorney Fine's baseless challenges have disrupted and delayed these proceedings."

As to the likelihood of an apology from Fine, the court noted, "[w]hile an apology, if offered, should be considered when adjudicating [a] contempt, no apology has been offered by attorney Fine since Commissioner Mitchell filed the Order Striking the Ninth Challenge on [September 5, 2001] nor, for that matter, did attorney Fine offer an apology for any of his previous eight meritless challenges for cause after they were denied on their merits or stricken on their face."

The court concluded that there were no mitigating factors in Fine's favor when determining the penalty for contempt, but concluded there were several serious aggravating factors: (1) "[t]he egregious nature of the allegations in the Ninth Challenge themselves, which contain repetitive, time-barred, and false allegations of judicial misconduct, asserted in a wholly conclusory manner;" (2) "[t]his is the latest in a two year pattern of false and baseless

challenges;" (3) "Fine's pattern of misconduct has persisted although the Court has repeatedly warned him, in Commissioner Mitchell's responses to Fine's prior challenges for cause, that his false and meritless challenges were contempt of court;" and (4) "Fine has already been monetarily sanctioned over $40,000 for prior misconduct, and . . . money sanctions have failed to halt his misbehavior."

The court opined that "imprisonment is the only appropriate punishment for this flagrant contempt, and the maximum of five days in jail is wholly appropriate." In imposing the sentence, the court noted that "the facts recited [within the order] occurred in the immediate view and presence of this Court."

*Petition for Writ of Certiorari.* Execution of sentence was stayed to allow Fine an opportunity to file this petition.[4] Upon receipt of this petition, we issued a temporary stay, and set an order to show cause.

*Appeal from December 1, 2000 Proceedings.* On February 14, 2002, this court issued an opinion dismissing the appeals from the orders purportedly made on December 1, 2000. As to Fine's removal of counsel claim, we noted that the trial court "made no orders on December 1, 2000 removing Mr. Fine." We found that "Commissioner Mitchell's oral statements at the December 1 status conference merely reiterated the orders of March 6, which removed Mr. Fine as class liability counsel and 'from any and all interests he acquired by being appointed class counsel.' The March order made clear that the court was removing Mr. Fine as counsel for individual class members in the claims administration process because those positions were obtained by virtue of the court's appointment of Mr. Fine as liability class counsel. The order of removal did not apply to the 19 clients Mr. Fine represented under separate retainer agreements prior to his being certified as class counsel." We concluded that because "it is clear that appellants seek to re-litigate the removal of Mr. Fine in March 2000 under the guise of seeking review of the December 1 order, and because the March 6, 2000 order is final . . . we need say nothing further in that regard." We rejected Fine's remaining arguments as either meritless or unsupported by the record. (*DeFlores II, supra,* B147721.)

---

[4]Fine's petition is entitled "petition for writ of habeas corpus or other appropriate stay order and relief and for an immediate stay of order and judgment of contempt against Attorney Richard I. Fine entered by Commissioner Mitchell on September 24, 2001." A writ of habeas corpus or in the alternative a writ of certiorari is properly invoked where, as here, a petitioner seeks to annul an order adjudging him in direct contempt of court. (*In re Buckley* (1973) 10 Cal.3d 237, 240, fn. 1 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.2d 248].) We will treat the petition as one for certiorari.

## II. Issues

Fine contends that Commissioner Mitchell had no power to adjudicate the contempt, and that the order of contempt is insufficient on its face to support the jurisdiction of the trial court and is not supported by the record.

## III. Discussion

### A. *Standard of review.*

■ "In reviewing an adjudication of contempt, 'the sole question before us is one of jurisdiction of the trial court to render the judgment under review, and in such a case the review of the evidence is limited to determining whether there was any substantial evidence to sustain the jurisdiction of the trial court.' [Citations.]" (*In re Buckley, supra,* 10 Cal.3d at p. 247.) "The power to weigh the evidence rests with the trial court." (*In re Ciraolo* (1969) 70 Cal.2d 389, 394 [74 Cal.Rptr. 865, 450 P.2d 241] (*Ciraolo*).)

### B. *A commissioner has the power to adjudicate a direct contempt of court.*

■ Fine contends that Commissioner Mitchell had no authority to adjudicate the contempt. We disagree.

■ As a general rule, only a duly elected or appointed judge can exercise the judicial power of a trial court of this state. The California Constitution, however, provides an exception to this rule. "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act *until final determination of the cause.*" (Cal. Const., art. VI, § 21, italics added.) " 'A cause is the proceeding before the court.' [Citation.] 'The appointment of a temporary judge to hear a particular "cause" carries with it the power to act until the final determination of *that proceeding.*' [Citation.]" (*McCartney v. Superior Court* (1990) 223 Cal.App.3d 1334, 1338 [273 Cal.Rptr. 250], citing *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 9-10 [118 Cal.Rptr. 21, 529 P.2d 53].)

■ Fine concedes that the first stipulation signed by the parties empowered Commissioner Mitchell to handle all pretrial proceedings. Fine claims, however, that after the final judgment was entered in June 1999 the stipulation authorizing Commissioner Mitchell to act in connection with all pretrial proceedings was no longer effective and that the commissioner was, therefore, without authority to issue the order of contempt. Fine relies on *Nierenberg v. Superior Court* (1976) 59 Cal.App.3d 611 [130 Cal.Rptr. 847] (*Nierenberg*) in support of his argument.

*Nierenberg*, however, is distinguishable. In that case, during a criminal trial, a commissioner sitting as a temporary judge cited a deputy public defender for direct contempt, with the hearing to be held at the conclusion of the trial. (*Nierenberg, supra,* 59 Cal.App.3d at p. 613.) Five days after the criminal defendant's acquittal and release, the contempt hearing commenced. (*Id.* at p. 614.) At the outset of the hearing, the public defender and his counsel expressly refused to stipulate that the commissioner could serve as a judge or that he had the power to act as a judge at the contempt hearing. (*Ibid.*) The commissioner presided over the contempt hearing without a stipulation, adjudged the public defender in contempt, and fined him. On petition for writ of certiorari, the Court of Appeal annulled the order adjudging the deputy public defender in contempt. (*Id.* at pp. 614-615.) The court held that the acquittal of the criminal defendant, discharge of the jury, and order releasing the defendant from custody "marked the 'final determination' of that 'cause' in which 'the parties litigant' had stipulated to empower the commissioner to act as a judge pro tempore," and that after final determination of the criminal action, the stipulation no longer was effective to confer judicial power on the commissioner to adjudicate the contempt, which was a cause distinct from the underlying criminal proceeding, and one which required a stipulation of the parties litigant thereto to vest the commissioner with the power to act as a temporary judge under California Constitution, article VI, section 21. (*Nierenberg, supra,* 59 Cal.App.3d at pp. 615-616.)

In *Nierenberg* the "cause" had become final by the time the temporary judge held the contempt hearing. Here the temporary judge (Commissioner Mitchell) continued to conduct proceedings in the "cause" pursuant to a new and different stipulation.

The record reflects that the stipulation executed by the parties when the case was first filed empowered Commissioner Mitchell to conduct "all pretrial proceedings." According to the order of contempt, Commissioner Mitchell views the proceedings occurring subsequent to entry of judgment in June 1999 as "pretrial proceedings" because no determination has yet been made concerning the amount of money each class member will receive, and thus a "trial" may be required in order to determine what allocation is to be made. Such an interpretation, we conclude, is strained. What the language of the stipulation executed by the parties when the case commenced makes clear is that when the class action lawsuit was initiated, the parties contemplated that unless settled, the case would proceed to trial, and Commissioner Mitchell could act as a temporary judge in connection with "all pretrial proceedings." When the case settled, and an order of judgment was entered, the "pretrial" phase of the action ended, as did Commissioner Mitchell's authority to act as a temporary judge pursuant to the first stipulation.

This brings us to the question of whether language contained within the settlement documents empowered Commissioner Mitchell to act in the underlying case, and if so, to what extent. As Fine points out, the stipulation contained within the stipulated order for entry of judgment does not specifically authorize Commissioner Mitchell to conduct any postjudgment proceedings. Rather, the parties stipulated that the "Court" was authorized to conduct such proceedings. Fine concludes, therefore, that the parties did not intend Commissioner Mitchell to act in any postjudgment capacity. Fine takes too narrow a view of the parties' stipulation. Where, as here, the parties agree that pretrial proceedings will be heard by a certain commissioner, and that commissioner thereafter executes a settlement agreement providing that "[t]he Court retains jurisdiction" to perform certain postjudgment tasks, it is clear that the parties have, in effect, agreed that the commissioner who previously conducted pretrial hearings and approved and executed the parties' settlement agreement is to perform those tasks specified in the stipulation. We therefore construe the stipulation contained within the stipulated order for entry of judgment to mean that Commissioner Mitchell was authorized to preside over the postjudgment proceedings as specified in the parties' settlement agreement.

Fine contends that even if this court construes the language of the stipulation contained within the stipulated order for entry of judgment to allow Commissioner Mitchell to conduct postjudgment proceedings, in the absence of language within the stipulated order authorizing him to issue orders of contempt, he had no authority to do so. Fine is wrong. While the parties to an action have the power to define and circumscribe the authority of a temporary judge (*In re Steven A.* (1993) 15 Cal.App.4th 754, 768 [19 Cal.Rptr.2d 576]), no express authority to issue contempt orders need be granted; such authority is inherent in the trial court's power to exercise reasonable control over its proceedings. (§ 128, subd. (a)(3).)

Temporary judges who act under stipulation have "full judicial powers" until final determination of the cause. (*In re Mark L.* (1983) 34 Cal.3d 171, 178 [193 Cal.Rptr. 165, 666 P.2d 22].) One of those judicial powers is to punish for contempt. (§§ 177, 178.) Section 177 provides that "[e]very judicial officer shall have power: [¶] 1. To preserve and enforce order in his immediate presence, and in proceedings before him, when he is engaged in the performance of official duty; [¶] 2. To compel obedience to his lawful orders as provided in this Code; [¶] 3. To compel the attendance of persons to testify in a proceeding before him, in the cases and manner provided in this Code; [¶] 4. To administer oaths to persons in a proceeding pending before him, and in all other cases where it may be necessary in the exercise of his powers and duties." Section 178 provides that "[f]or the effectual

exercise of the powers conferred by the last section, a judicial officer may punish for contempt in the cases provided in this Code."

The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court: (1) disorderly, contemptuous, or insolent behavior towards the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding; (2) abuse of the process or proceedings of the court, or falsely pretending to act under the authority of an order or process of the court; and (3) any other unlawful interference with the process or proceedings of a court. (§ 1209.) ▆ "Direct contempt is that committed in the immediate view and presence of the court or of the judge at chambers; all other contempts are indirect which by definition occur outside the presence of the court." (*Nierenberg, supra,* 59 Cal.App.3d at p. 616.) The California Supreme Court has held that the filing of a false affidavit of disqualification is a direct contempt. (*Ciraolo, supra,* 70 Cal.2d at p. 393, citing *Lamberson v. Superior Court* (1907) 151 Cal. 458 [91 P. 100] [contempt order upheld where attorney presented "degrading accusations under the guise of mere belief," without the aid of supporting facts] and *Blodgett v. Superior Court* (1930) 210 Cal. 1, 9 [290 P. 293, 72 A.L.R. 482].)

▆ Because the "cause" was still pending before Commissioner Mitchell when Fine's direct contempt occurred in August 2001, and because Commissioner Mitchell was acting as a temporary judge pursuant to the parties' stipulation, we conclude that Commissioner Mitchell had the authority both to cite Fine for contempt and to summarily adjudicate the contempt.

C.  *The record contains evidence sufficient to support the order of contempt.*

▆ Fine contends that the order of contempt fails to satisfy the requirements of section 1211 which establishes the procedure that is to be followed in adjudging a person in contempt of court.

Section 1211, subdivision (a) provides: "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he or she be punished as therein described."

Section 1218, subdivision (a) provides: "Upon the answer and evidence taken, the court or judge shall determine whether the person proceeded

against is guilty of the contempt charged, and if it be adjudged that he or she is guilty of the contempt, a fine may be imposed on him or her not exceeding one thousand dollars ($1,000), or he or she may be imprisoned not exceeding five days, or both."

■ Where, as here, the contempt consists of the filing of a false affidavit of disqualification, due process is satisfied if the trial court makes an order reciting the facts constituting the contempt, adjudging the person guilty, and prescribing the punishment. (*Ciraolo, supra,* 70 Cal.2d at p. 393.) The order of contempt must recite the facts with sufficient particularity to demonstrate on its face that petitioner's conduct constitutes a legal contempt. (*In re Littlefield* (1993) 5 Cal.4th 122, 138 [19 Cal.Rptr.2d 248, 851 P.2d 42].) "The recital-of-facts requirement is not met by a mere statement of the trial judge's conclusions regarding the nature of the conduct giving rise to the contempt. The order adjudging a person guilty of contempt must be stated with sufficient particularity to demonstrate on its face, 'without aid of speculation or reference to any extrinsic document[,] that a contempt actually occurred.' [Citations.]" (*Ibid.*) Although "transcripts of pertinent hearings attached to the written contempt judgment may be considered in order to ascertain the context in which the contempt occurred, the written order adjudging a person guilty of contempt nonetheless must state *on its face* the specific act constituting the contempt." (*Id.* at pp. 138-139, fn. 10.)

*Ciraolo* is instructive. In that case, the Alameda County Public Defender's Office represented a criminal defendant with Assistant Public Defender Michael C. Ciraolo assigned as trial counsel. The case was assigned to Judge Robert H. Kroninger for trial. On the same day, Ciraolo filed an affidavit for cause against Judge Kroninger. Ciraolo declared that in connection with a separate case involving another deputy public defender, Judge Kroninger had declared that the public defender and his office were incompetent. Ciraolo claimed that due to this statement the court was prejudiced against him, and that the defendant he was representing could not, therefore, have a fair and impartial trial before Judge Kroninger. (*Ciraolo, supra,* 70 Cal.2d at pp. 391-392.) Ciraolo's challenge was heard before another judge who found that Judge Kroninger had not made the statement attributed to him or any statement to that effect and therefore was not disqualified. Judge Kroninger then conducted the criminal trial, with Ciraolo acting as trial counsel. (*Id.* at p. 392.) Following the sentencing hearing, with Ciraolo in court, Judge Kroninger conducted a summary proceeding, at the conclusion of which he found the public defender in contempt for his conduct in the filing of the "unsupported challenge and of the false affidavit in connection therewith." (*Id.* at pp. 392-393.) Ciraolo then sought habeas corpus. In denying relief, the Supreme Court stated: "The judgment and commitment order in this case

recite that [Ciraolo] had filed the offending affidavit (quoting it) under penalty of perjury; that the factual allegations in the affidavit were wholly false, although [Ciraolo] had declared such facts to be true of his own knowledge; that they charged the judge with judicial misconduct, with slander and with intended neglect of duties; that upon being given opportunity to produce evidence and to explain the filing of the affidavit [Ciraolo] replied in substance only that his purpose had been to obtain a continuance of the trial; that in the premises [Ciraolo] did not in good faith believe the truth of his assertions but instead used the affidavit and the disqualification motion simply as one of a number of sequential efforts to obtain continuances; that as a result of [Ciraolo's] actions the court, its attaches and 60 potential jurymen were idled pending the hearing on petitioner's challenge." (*Id.* at pp. 393-394.) The court concluded, "[c]ontrary to [Ciraolo's] contention, such a recitation is obviously adequate to support the order adjudging [Ciraolo] in contempt for misbehavior in office, for violation of his duty as attorney, assistant public defender and as officer of the court, and for abuse of process." (*Id.* at p. 394.) The court also held that the "record obviously supports the inference that petitioner filed his false affidavit as a device in his repeated efforts to secure further continuances." (*Ciraolo, supra,* 70 Cal.2d at pp. 398-399.)

██ Fine's August 30, 2001 disqualification statement asserted that on six occasions Commissioner Mitchell, acting in concert with Attorney Diane Goldman, "abused and misused the judicial process." Fine provided few facts in support of the allegations contained within his statement of disqualification. We conclude, therefore, that the statement of disqualification was properly stricken. (See § 170.4, subd. (c)(1); *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 426 [285 Cal.Rptr. 659], citing *In re Morelli* (1970) 11 Cal.App.3d 819, 843 [91 Cal.Rptr. 72] [holding mere conclusions of the pleader are insufficient].) The question presented by this petition, however, is whether the order of contempt is sufficient to show whether any of Fine's assertions that Commissioner Mitchell, acting in concert with Goldman, "abused and misused the judicial process" were false. We discuss each of Fine's allegations of judicial misconduct separately.

1) Fine alleged that Commissioner Mitchell, acting in concert with Goldman, "abused and misused the judicial process" by "unlawfully delaying the claims administration process by stopping such on December 13, 1999, at the request of . . . Goldman in violation of [section 170.4, subdivision (d)]."

As to this allegation, the order of contempt provides: "In fact, the court's records reveal that claims administration needed to be abated until Fine's original Section 170.3 challenge, and then the OSC re his removal as class

counsel were resolved, so that it was clear which attorney represented which claimants, as the title of Ms. Goldman's application, filed December 13, 1999, clearly states: 'Plaintiff's Ex Parte Application For An Order Staying All Further Meetings Or Hearings until Resolution Of Challenge & OSC Re Removal of Class Counsel.' Staying the proceedings was not only a lawful exercise of this court's discretion, it was absolutely necessary."[5]

The record reflects that on December 1, 1999,[6] Fine filed his first disqualification statement against Commissioner Mitchell, the commissioner responded by filing an answer, Goldman then filed an ex parte application for a stay of proceedings pending resolution of Fine's disqualification challenge, and on December 13, 1999, Commissioner Mitchell issued a minute order granting Goldman's motion. Fine's allegation that the commissioner "illegally delay[ed] the claims administration process" is based on his contention that Commissioner Mitchell had no authority to issue a stay order while Fine's section December 1, 1999 disqualification challenge was pending.

Section 170.3, subdivision (a)(1) provides that "[w]henever a judge determines himself or herself to be disqualified, the judge shall notify the presiding judge of the court of his or her recusal and shall not further participate in the proceeding, except as provided in Section 170.4, unless his or her disqualification is waived by the parties as provided in subdivision (b)."

Section 170.4, subdivision (a) provides as follows: "A disqualified judge, notwithstanding his or her disqualification may do any of the following: [¶] (1) Take any action or issue any order necessary to maintain the jurisdiction of the court pending the assignment of a judge not disqualified. [¶] (2) Request any other judge agreed upon by the parties to sit and act in his or her place. [¶] (3) Hear and determine purely default matters. [¶] (4) Issue an order for possession prior to judgment in eminent domain proceedings. [¶] (5) Set proceedings for trial or hearing. [¶] (6) Conduct settlement conferences."

Section 170.4, subdivision (d) provides that "[e]xcept as provided in this section, a disqualified judge shall have no power to act in any proceeding

---

[5]Fine contends that because Commissioner Mitchell referred to the OSC regarding Fine's removal as class counsel and to Goldman's ex parte application for a stay, Commissioner Mitchell was obligated to attach copies of these documents to the contempt order. The commissioner had no such obligation. Although documents may be attached to show the context, the real issue is whether the order of contempt contains facts sufficient to show that a contempt occurred. (*In re Littlefield, supra,* 5 Cal.4th at pp. 138-139, fn. 10.)

[6]Fine claims the disqualification challenge was filed on November 24, 1999. The record reflects that it was filed on December 1, 1999.

after his or her disqualification or after the filing of a statement of disqualification until the question of his or her disqualification has been determined."

Fine contends that because a motion to stay proceedings is not listed in section 170.4, subdivision (a), Commissioner Mitchell had no power to hear the motion. We disagree. The record shows that upon receipt of the December 1, 1999 statement of disqualification, Commissioner Mitchell filed an answer to the challenge and took several motions off calendar. A few days later, Commissioner Mitchell issued a stay of the proceedings in order to "maintain the jurisdiction of the court" pending resolution of Fine's disqualification statement. (§ 170.4, subd. (a)(1).) We find nothing unlawful in such an act. We note, however, that even if Commissioner Mitchell erred in issuing the stay, his act of doing so cannot on this record be construed as an abuse and misuse of the judicial process. Moreover, nothing contained within the record indicates that Commissioner Mitchell acted in concert with Goldman in issuing the stay of proceedings.

We conclude that the statement contained within Fine's affidavit of disqualification that Commissioner Mitchell "abused and misused the judicial process" by "unlawfully" delaying the claims administration process by issuing a stay of proceedings on December 13, 1999, is false, and thus contemptuous.

2) Fine alleged that Commissioner Mitchell, acting in concert with Goldman, "abused and misused the judicial process" by "soliciting and offering to pay . . . Goldman from the Settlement fund on April 14, 2001, to represent him in the present appeal of the December 1, 2000 Orders which . . . Goldman is doing in conflict of the interests of her clients in having a private judge decide the value of their claims."

As to this allegation, the order of contempt provides: "In fact, as the Court's Minute Order of April 16, 2001 reveals, the Court advised *all* parties that the Court would not be filing an opposition to Fine's bogus appeal [wherein he alleges he was removed as class counsel at the December 1st status conference, instead of the March 6, 2000, Order Removing], but that the Court recognized that at least one of the real parties in interest must file an opposition, and that *whomever* assumed that task *might* later have a claim for attorney's fees for having conferred a 'common benefit,' but that the issue would have to be fully briefed later, and the Court could not promise payment." A copy of the April 16, 2001 minute order was attached to the order of contempt.

This allegation is perhaps the more serious accusation of judicial misconduct set forth by Fine in his statement of disqualification. The order of

contempt accurately summarizes the comments made by the trial court on April 16, 2001, with respect to the appeal filed by Fine. A review of the minute order attached to the order of contempt shows that Commissioner Mitchell, when advised that Fine had appealed from the "order" purportedly made on December 1, 2000, properly suggested that a response to the appeal would be in order and that the party responding *could* be entitled to attorney fees.[7]

As to the validity of Fine's appeal from the December 1, 2000 proceedings, that appeal was dismissed for lack of jurisdiction because there were no appealable orders properly before this court. Moreover, this court determined that Commissioner Mitchell had made no orders on December 1, 2000, removing Fine; that Fine was merely seeking to relitigate his removal in March 2000, under the guise of seeking review of the December 1, 2000 proceedings. (*DeFlores II, supra*, B147721.)

We conclude that Fine's accusation that Commissioner Mitchell abused and misused the judicial process by "soliciting and offering to pay" Goldman to represent him in Fine's appeal from the orders purportedly made on December 1, 2000, is false, and thus contemptuous.

3) Fine alleged that Commissioner Mitchell, acting in concert with Goldman, "abused and misused the judicial process" by "allowing Ms. Goldman to interfere with the attorney client relations of Fine and his clients as admitted" in paragraph 9 of Goldman's declaration dated July 24, 2001. Fine provided no additional facts. Nor did he attach a copy of the declaration purportedly filed by Goldman to his disqualification statement.

As to this allegation, the order of contempt provides: "No factual explanation is offered, and a factually unsupported allegation which demeans judicial integrity is contemptuous. [A]ttorney Goldman is the court-appointed Liaison Counsel in this litigation—a role attorney Fine formerly held but was removed from for misconduct—and as such she has certain administrative responsibilities; a critical fact which Fine omits. Attorney Fine also fails to identify which 'clients' he is referring to, and may well be referring to his 356 *former* clients, for whom he was removed as class counsel, and with whom he now has no attorney-client relationship."

Fine suggests that because Commissioner Mitchell was aware of Goldman's declaration, the commissioner was required to address the language contained therein in the order of contempt in order to prove that Fine's

---

[7]As permitted by *In re Littlefield, supra*, 5 Cal.4th at pages 138-139, footnote 10, we have reviewed the minute order to ascertain the context in which the contempt occurred.

allegation was false. Commissioner Mitchell had no such obligation. ■ A charge of judicial misconduct unsupported by facts constitutes a groundless attack upon the integrity of a judicial officer, and is on its face contemptuous. (See *Lamberson v. Superior Court, supra,* 151 Cal. at pp. 463-464.) When faced with such an attack, the judicial officer is required to do no more than state within the order of contempt that the charge of judicial misconduct is unsupported by fact and is false.

■ Fine has attached a copy of a declaration filed by Diane Goldman to this petition. It is dated July 27, 2001. We assume that this is the declaration referred to in Fine's disqualification statement. Paragraph 9 provides as follows: "As liaison counsel, I have received numerous telephone calls from class members, inquiring into the status of this action. In accordance with the orders of this Honorable Court, I have provided information as to the status, including: [¶] a) Mr. Fine has been removed as class counsel; [¶] b) Class members will be receiving a notice from the court that very thoroughly explains the next stage of the litigation, including the re-selection of counsel; [¶] c) The attorneys representing other claimants are available to represent class members, as more particularly set forth in the upcoming notice; [¶] d) I cannot estimate how long the rest of the litigation will take, how the final claims valuation will be determined, and I have been chosen to assist the court in preparing notices to class members and other claimants."

As Commissioner Mitchell noted in the order of contempt, the allegation that the commissioner allowed Goldman to interfere with Fine's attorney client relations with his clients is conclusory and unsupported by facts. Moreover, nothing contained within paragraph 9 of the Goldman declaration attached to this petition suggests that Commissioner Mitchell allowed attorney Goldman to "interfere with the attorney client relations of Fine and his clients." We thus conclude that Fine's allegation is false and thus contemptuous.

4) Fine alleged that Commissioner Mitchell, acting in concert with Goldman, "abused and misused the judicial process" because he failed to punish Goldman for "placing her address on the 'court notice' without permission thereby allowing claimants to believe she has a 'special' status in the case."

As to this allegation, the order of contempt provides: "[Fine] fails to explain: [a] which court notice he is referring to; [b] why Ms. Goldman, who is Liaison Counsel, was not authorized to use her return address; and [c] whether any formal motion to impose punishment was ever filed and heard. Such a factually devoid allegation is contemptuous."

Fine explains in connection with this petition that Goldman sent only one court notice to the claimants, a notice dated December 18, 2000, and that

Goldman's address was on the envelope as the return address. Fine notes that after a complaint was lodged with the court concerning the placement of Goldman's address on the envelope, "[c]ourt notices were thereafter sent by the disbursing agent and the return address for the court is now a post office box."

Even if we assume that Goldman violated some court order or rule of court by putting her return address on a court notice, Fine has failed to explain why the court was required, sua sponte, to "punish" Goldman for doing so. Moreover, it appears that the court took some form of corrective action, which Fine acknowledges.

Nothing contained within this record suggests that Commissioner Mitchell engaged in misconduct by failing to "punish" Goldman for putting her return address on a court notice. We therefore conclude that the allegation is false and thus contemptuous.

5) Fine alleged that Commissioner Mitchell, acting in concert with Goldman, "abused and misused the judicial process" by failing to sanction Goldman "for breaking the June 5, 2001 non solicitation order for writing the July 2, 2001 letter to Richard Bagdasarian."

As previously noted, a charge of judicial misconduct unsupported by facts constitutes a groundless attack upon the integrity of a judicial officer, and is on its face contemptuous. However, although Commissioner Mitchell averred in the order of contempt that the allegations contained within Fine's disqualification statement were false, Commissioner Mitchell did not address this particular allegation within the order. This appears to have been an oversight since the commissioner did address the allegation in connection with his order striking the August 30, 2001 challenge, an order he expressly incorporated within the order of contempt. The order striking the disqualification statement provides: "Fine has not attached either the 'June 5, 2001 non solicitation order' or 'the July 2, 2001 letter to Richard Bagdasarian.' Nor has he explained why Ms. Goldman's letter to Bagdasarian was a 'solicitation.' [¶] Ms. Goldman is Liaison Counsel in this litigation and the Court has authorized her, and instructed her, to respond to letters of complaint which certain of Fine's clients have written to the Court. Those letters reveal that attorney Fine gave them false information concerning this litigation, apparently to inflame them into writing letters of complaint. The Court received such a letter from Mr. Bagdasarian. [¶] No motion has been filed or heard which concerned sanctioning Ms. Goldman for this alleged conduct; Commissioner Mitchell has had no formal occasion to consider the matter."

Although it is clear that Fine's allegation is false, we cannot hold that the order of contempt is sufficient with respect to this allegation since the order

does not set forth facts necessary to uphold the contempt, but rather incorporates statements contained within a separate document.

6) Fine alleged that Commissioner Mitchell, acting in concert with Goldman, "abused and misused the judicial process . . . by hearing a motion for disqualification of Fine which duplicates the present appeal of the December 1, 2001 Orders brought by . . . Goldman in violation of [section 916] while knowing that he is prohibited from hearing such."

As to this allegation, the order of contempt provides: "The Court has a lawful duty to hear all motions duly filed. Further, the Court denied Ms. Goldman's motion. Fine filed his Ninth Challenge at the conclusion of that motion hearing, knowing that attorney Goldman's motion had been denied. Such a legally unsupportable contention is contemptuous."

Fine's statement that Commissioner Mitchell engaged in misconduct by setting a hearing to have Fine barred from further acting as counsel in the underlying case is nothing more than speculation. Fine states no facts showing that the motion filed by Goldman was frivolous, or that Commissioner Mitchell acted in any other than a lawful manner in hearing the motion. This is yet another charge of judicial misconduct unsupported by fact attacking the integrity of a judicial officer. It is, on its face, contemptuous.

We conclude that the order of contempt sets forth facts sufficient to show that Fine's August 30, 2001 statement of disqualification contains five false allegations accusing Commissioner Mitchell of judicial misconduct. We therefore conclude that the order of contempt must be upheld. (*Ciraolo, supra,* 70 Cal.2d at p. 394 ["It cannot be questioned that the filing by an attorney of an affidavit containing statements known to be false, or with disregard as to their truth or falsity, is contemptuous, as is any other attempt to deceive a court. [Citations.] Included are false statements accusing a judge of misconduct. [Citations.]"]; *In re Grossman* (1972) 24 Cal.App.3d 624, 639 [101 Cal.Rptr. 176] ["A judge of a court is well within his rights in protecting his own reputation from groundless attacks upon his judicial integrity."].)

We also conclude that the order of contempt recites facts sufficient to show that Fine filed the August 30, 2001 disqualification statement for the improper purpose of delaying the proceedings. As reflected in the order of contempt, prior to August 30, 2001, Fine had filed in the underlying action eight previous disqualification challenges. In addition, petitioner had filed numerous previous statements seeking to disqualify Commissioner Mitchell

in other pending litigation on much the same grounds as those raised in the nine challenges filed in the *DeFlores* matter. Each of these challenges was either denied by the judge assigned by the Judicial Council, or stricken by Commissioner Mitchell as facially inadequate. The record reflects that each time Fine sought extraordinary relief with respect to these challenges, the petitions were denied by the appellate court. We have reviewed each of the challenges filed in the *DeFlores* matter. They are meritless. An inference can be drawn from this fact, alone, that the August 30, 2001 statement of disqualification was filed for the improper purpose of delaying the proceedings below.

■ As to the sentence imposed we believe it appropriate under the circumstances surrounding Fine's contemptuous behavior. The record shows that Fine had been warned prior to the filing of the August 30, 2001 disqualification statement that the filing of a false statement of disqualification was contemptuous. Moreover, as set forth above, all of the six allegations of misconduct were false, and the order of contempt was sufficient with respect to five of them.

Fine's position in connection with this petition and in connection with prior writ petitions and appeals is that he has been the victim of Commissioner Mitchell's judicial misconduct. We have examined the record submitted in connection with this petition, as well as the records submitted in connection with each of the prior appeals and prior writ petitions. We find no evidence whatsoever of judicial misconduct on the part of Commissioner Mitchell.

## IV. DISPOSITION

The petition for writ of certiorari is denied. The temporary stays issued on October 2, 2001, and November 21, 2001, are vacated. The trial court is directed to proceed immediately with the claims adjudication process. The parties to bear their own costs.

Nott, J., and Doi Todd, J., concurred.

On April 11, 2002, the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied May 22, 2002. George, C. J., and Baxter, J., did not participate therein. Petitioner's second petition for review by the Supreme Court was denied October 30, 2002.