John SILVA, Plaintiff,

v.

COUNTY OF LOS ANGELES,
et al., Defendants.

No. CV 02–4645 AHM(JTLx).

United States District Court,
C.D. California.

Aug. 6, 2002.

Richard I Fine, Richard I Fine & Associates, Beverly Hills, CA, for John Silva.

Elwood G. Lui, Scott D. Bertzyk, Jason C. Murray, Jones Day Reavis & Pogue, Los Angeles, CA, for County of Los Angeles.

Kevin M. McCormick, Brenda L. McCormick, Benton Orr Duval & Buckingham, Ventura, CA, for James C. Chalfant, Kathryn Doi Todd, Bruce E. Mitchell, Roger W. Boren, Michael G. Nott.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

MATZ, District Judge.

### I.

### INTRODUCTION

This action is before the Court on the motion of the County of Los Angeles ("the County") and the motion of James Chalfant, Kathryn Doi Todd, Bruce E. Mitchell, Roger W. Boren and Michael G. Nott ("Court Defendants") to dismiss Plaintiff's complaint. For the reasons stated herein, Defendants' motions are GRANTED with prejudice.

### II.

### FACTUAL BACKGROUND

This is the second federal lawsuit that Plaintiff's attorney, Richard I. Fine, has filed against state court judges and judicial officers who have issued unfavorable rulings against his clients and him.

In *Los Angeles County Association of Environmental Health Specialists v. Lewin* ("*LACAEHS*"), 215 F.Supp.2d. 1071 (C.D.Cal.2002), Mr. Fine was plaintiff's counsel in a suit filed against Superior Court Judge Kurt Lewin, who had denied him attorneys' fees in a state court case. Mr. Fine also named the California Court of Appeal, a panel of which had affirmed Judge Lewin's denial of fees, the Superior Court itself, and the County of Los Angeles ("the County"), which had been the defendant in the state court action. *LACAEHS* was a thinly-veiled attempt by Mr. Fine to use the federal court system to attack Judge Lewin's decision and obtain the attorney's fees he had requested in the state case: not only did the complaint itself repeatedly ask this Court to strike Judge Lewin's decision, but the amount of "damages" sought in the complaint for the alleged 42 U.S.C. § 1983 violations was $1.5 million, the same amount as the attorneys' fees Mr. Fine had requested in the state case.

The plaintiff's theory in *LACAEHS* was essentially the same as it is in the case currently before the Court: the County impermissibly pays Superior Court judges "local judicial benefits," and Superior Court judges should be required to disclose that they receive such benefits in cases where the County is a party. Judge Lewin's failure to do so, Mr. Fine alleged on behalf of his client, violated his client's rights to equal protection, due process and access to the courts.

On May 31, 2002, the Court dismissed the complaint in *LACAEHS* with prejudice on the grounds that: (1) it was an attempt to use a federal district court to reverse a state court decision, and was therefore barred under the *Rooker–Feldman* doctrine; (2) alternatively, Judge Lewin enjoyed absolute judicial immunity; and (3) alternatively, the Superior Court and the Court of Appeal enjoyed Eleventh Amendment immunity. (Because the claims against Judge Lewin were clearly barred under the doctrine of judicial immunity, the Court did not reach whether he also enjoyed Eleventh Amendment immunity.)[1]

In the case currently before the Court, Mr. Fine represents John Silva. Accord-

---

1. On June 11, 2002, Mr. Fine filed a motion for leave to amend his complaint in *LACAEHS*, and filed a proposed amended complaint. On June 13, 2002, the Court struck Mr. Fine's motion because his complaint had already been dismissed with prejudice. The Court notes that the complaint now before it is essentially a duplicate of the proposed amended complaint in *LACAEHS*, although the plaintiff's name and some of the defendants' names have been changed. The Court agrees with the County Defendants that in filing this complaint Mr. Fine is attempting to circumvent the Court's order dismissing the *LACAEHS* complaint with prejudice.

ing to the complaint, Mr. Silva was the plaintiff in the state case *Silva v. Garcetti,* LASC Case No. 205645, in which he sought a ruling requiring Los Angeles County to disburse some fourteen million dollars of child support payments on various grounds. Complaint ¶ 6. In that case, Superior Court Judge James C. Chalfant granted the District Attorney's motion for directed verdict, which on February 6, 2002 the Court of Appeal, per Justice Kathryn Doi Todd, affirmed on appeal.[2] *See* Court Def.'s Mot. Ex A at 29 (a copy of the Court of Appeal decision in that case, of which the Court takes judicial notice). Presiding Justice Roger W. Boren and Justice Michael G. Nott concurred in Justice Doi Todd's decision. *Id.* at 38. Silva argued for the first time on appeal that Judge Chalfant should have been disqualified from hearing the case because the County was a party to the suit and Judge Chalfant failed to disclose that he received "local judicial benefits" from the County. *Id.* at 37. The appeals court rejected this argument because Silva raised this issue for the first time on appeal, and failed timely to seek to disqualify Judge Chalfant using the procedures established in California Code of Civil Procedure § 170.3. *Id.*

The appeals court held that Silva had not argued that Judge Chalfant had "a personal bias or prejudice concerning a party." *Id.* at 38. The court held, however, that "even if the trial judge's purported receipt of 'local judicial benefits' arguably created a personal bias in favor of the County, Silva's recourse was to challenge the judgment by timely petition for writ of mandate, as required under section 170.3, subdivision (d)." *Id.* Because Silva failed to petition for writ of mandate, an attempt

to disqualify Judge Chalfant on the ground that he had a personal bias was barred.

On May 22, 2002, the California Supreme Court denied Silva's petition for review. Court Def.'s Mot. Ex. D at 95.

On June 13, 2002, Silva filed this class action complaint in which he named as defendants the County, James Chalfant, Kathryn Doi Todd, Bruce E. Mitchell, Roger W. Boren and Michael G. Nott.[3] Bruce Mitchell is a court commissioner in the Los Angeles County Superior Court. Complaint ¶ 11. The complaint does not allege that he was involved in Silva's action against Garcetti. The Court Defendants point out that Commissioner Mitchell was appointed to serve as a judge in the "*DeFlores* matter," a separate state court proceeding in which Mr. Fine served as class counsel for the plaintiffs. *See Fine v. The Superior Court of Los Angeles County,* 97 Cal.App.4th 651, 655, 119 Cal.Rptr.2d 376 (Cal.Ct.App.2002). On September 24, 2001, Commissioner Mitchell held Mr. Fine in contempt based on Mr. Fine's repeated, baseless attempts to disqualify him. *Id.* at 658, 119 Cal.Rptr.2d 376. Commissioner Mitchell found that Mr. Fine's ninth disqualification challenge was "false and meritless." *Id.* Commissioner Mitchell had previously imposed sanctions on Mr. Fine for his "persistent" and "inappropriate[ ] efforts to obtain an advance of attorney fees from the settlement proceeds." *Id.* at 656, 119 Cal.Rptr.2d 376.

On April 11, 2002, a panel of the California Court of Appeal—also consisting of Presiding Justice Boren and Justices Doi Todd and Nott—dismissed Mr. Fine's appeal of the contempt order issued by Commissioner Mitchell. *Id.* at 663–73, 119 Cal.

---

2. The underlying facts of the state case are not relevant for purposes of this motion.

3. The case initially was assigned to Judge Hatter, but on June 27, 2002 it was trans-

ferred to this Court because it is related to the low-number *LACAEHS* case. Indeed, for no apparent reason, the complaint cites the state court *LACAEHS* case and Judge Lewin's involvement in that case. Complaint ¶ 8.

Rptr.2d 376. The panel previously had dismissed his appeal of the sanctions. *Id.* at 657, 119 Cal.Rptr.2d 376.

In Silva's complaint before this Court, he seeks injunctive relief: (1) prohibiting the County from paying local judicial benefits to Los Angeles County Superior Court judges and court commissioners who preside over cases in which the County is a party; (2) compelling Superior Court judges, court commissioners, and California Court of Appeal justices who formerly were Superior Court judges who do or did receive such benefits to disclose that fact; and (3) compelling California Court of Appeal justices who know that Superior Court judges, court commissioners or California Court of Appeal Appeal justices received "local judicial benefits" to disclose such knowledge. Complaint ¶ 1. Silva seeks to certify a defendant class of all Los Angeles Superior Court judges, court commissioners and California Court of Appeal justices. Complaint ¶¶ 32–35.

Silva alleges that the County's payment of benefits to judges and the judges' failure to disclose such payment deprived Silva of his rights to due process, equal protection and access to the Courts. Complaint ¶¶ 43–44.

The County and the Court Defendants have filed separate motions to dismiss, although the Defendants have joined in each other's motions. The County moves to dismiss on the grounds that: (1) Plaintiff's claim for relief is barred under the *Rooker–Feldman* doctrine; and (2) Plaintiff lacks standing.

The Court Defendants move to dismiss on the additional grounds that: (1) Plaintiff's claims are barred under the Eleventh Amendment; (2) Plaintiff's complaint should be dismissed as improper forum

shopping; (3) Plaintiff has an adequate remedy to raise disqualification issues, obviating the need for injunctive relief; (4) Plaintiff's claims against the Superior Court Commissioners and Court of Appeal Justices should be dismissed because they do not receive local judicial benefits; (5) Superior Court judges have no duty to disclose receipt of salary and benefits from governmental agencies; (6) the payment of local judicial benefits to Superior Court judges is automatically disclosed as it is a matter of public record; (7) they are entitled to absolute judicial immunity; (8) Plaintiff's claims are barred by the doctrine of *res judicata* and the Full Faith and Credit clause.

The Court Defendants also ask the Court to "consider ordering such other and further relief as may be appropriate regarding the continuing conduct of attorney Fine." Court Def.'s Mot. at 27. The County urges the Court to consider imposing sanctions on Mr. Fine under Rule 11 and 28 U.S.C. § 1927 "in a fashion that discourages further frivolous litigation over these issues." County Def. Mot. at 11.

## III.

## DISCUSSION

### A. Judicial Immunity

The Court Defendants argue that Silva's claims for relief against them are barred under the doctrine of judicial immunity. This argument is premised on the weak assertion that Silva's complaint seeks damages. *See* Court Def.'s Mot. at 21 n. 14. But the complaint neither explicitly nor implicitly seeks damages, despite Silva's request for attorney's fees. Rather, it seeks only injunctive relief under 42 U.S.C. § 1983.[4] "It is now established

---

4. Even if the Court construed the complaint to request both damages and injunctive relief, Silva's claims for injunctive relief still would

not be barred under the doctrine of judicial immunity.

that judicial immunity does not bar declaratory or injunctive relief in actions under § 1983." *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1391 (9th Cir.1987). Therefore, Silva's claims against the state court judges for injunctive relief are not barred by judicial immunity.

## B. Eleventh Amendment

■ Silva's claims are not barred by the Eleventh Amendment. "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir.1995). However, "[i]n *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court made it clear that a suit against a state official seeking injunctive relief from unconstitutional state action is not a suit against the state, regardless of whether the state is the real party in interest." *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir.1984). This means that unlike claims for damages against state officials, which *are* barred if the state is the "real party in interest," a claim against state officials seeking to enjoin allegedly unconstitutional state action is not barred even if the state is the real party in interest. *Id.*

The Court Defendants are correct that in *Yakama Indian Nation v. State of Washington*, 176 F.3d 1241, 1244 (9th Cir. 1999), the Ninth Circuit interpreted *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), to limit the circumstances in which an action for prospective injunctive relief may proceed in federal court. In *Coeur d'Alene*, the Supreme Court held the Eleventh Amendment barred an Indian tribe's claim for

declaratory and injunctive relief against state officials where the tribe sought to divest the state of all regulatory power over its own land. *Coeur d'Alene*, 521 U.S. at 289, 117 S.Ct. 2028 (O'Connor, J., concurring in part and concurring in the judgment) ("[T]he Tribe seeks to eliminate altogether the State's regulatory power over the submerged lands.").

More recently, however, the Ninth Circuit has interpreted *Coeur d'Alene* very narrowly, holding that a suit for injunctive relief against state officials may proceed in federal court unless "the relief requested would be so much of a *divestiture* of the state's sovereignty as to render the suit as one *against the state itself.*" *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1048 (9th Cir.2000), *cert. denied*, 532 U.S. 958, 121 S.Ct. 1485, 149 L.Ed.2d 373, 69 U.S.L.W. 3530 (U.S. Apr. 2, 2001) (No. 00–1233) (emphasis in original). In *Agua Caliente*, the Ninth Circuit "start[ed] with the principle that the *Young* doctrine is alive and well and that *Coeur d'Alene* addressed a unique, narrow exception." *Id; see also Duke Energy Trading and Marketing L.L.C. v. Davis*, 267 F.3d 1042, 1053 (9th Cir.2001) (emphasizing narrowness of the holding in *Coeur d'Alene*).

Silva's requested relief—enjoining the County from making payments to Superior Court judges and requiring judges to disclose that they are receiving benefits or know of others who are—does not come close to requesting a "divestiture of the state's sovereignty as to render the suit as one against the state itself." *Id.* Therefore, the *Ex parte Young* exception applies, and Silva's claims for injunctive relief against state judicial officers are not barred by the Eleventh Amendment.[5]

---

5. As stated above, the Court does not construe Silva's complaint as requesting damages, notwithstanding the Court Defendants' weak argument to the contrary. *See* Court Def.'s Mot. at 21 n. 14.

## C. The *Rooker–Feldman* Doctrine

Under the *Rooker–Feldman* doctrine, "[t]he United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings." *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir.1986). Rather, under federal statute, "the proper court in which to obtain such review is the United States Supreme Court." *Id.* (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983)).

"This doctrine applies even when the challenge to the state court decision involves federal constitutional issues." *Id.* (citing *Feldman*, 460 U.S. at 484–86, 103 S.Ct. 1303). A federal district court, however, may assert jurisdiction over a "general" constitutional challenge to a state rule "that does not require review of a final state court decision in a particular case." *Id.* (citing *Feldman*, 460 U.S. at 482–86 & n. 16, 103 S.Ct. 1303).

The distinction between a challenge to a particular state court decision and a general challenge to a state rule "may be subtle, and difficult to make." *Id.* (citing *Feldman*, 460 U.S. at 485, 103 S.Ct. 1303). The Supreme Court has explained that a district court may not consider constitutional claims if they are "inextricably intertwined" with the state court's decision in a particular case. *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. 1303. Moreover, a party may forfeit his right to obtain review of his federal claims if it could have, but failed to, raise the claims in state court. *Id.* The purpose of this rule is to "giv[e] the state court the first opportunity to consider a state statute or rule in light of federal constitutional arguments." *Id.* "In other words, *Rooker–Feldman* will bar not only federal issues actually raised in state courts, but also those inextricably intertwined issues that could have been raised

there." Barry Friedman & James E. Gaylord, *Rooker–Feldman, From the Ground Up*, 74 Notre Dame L. Rev. 1129, 1135 (1999).

■ Silva's complaint is not barred by *Rooker–Feldman*. Unlike the complaint in *LACAEHS*, Silva's complaint does not explicitly request review of a specific state court decision, and seeks only prospective injunctive relief. Also unlike the complaint in *LACAEHS*, the complaint here does not explicitly ask this Court to strike any particular decision or to provide Silva with the relief he was denied in state court. Cf. *Canatella v. California*, 293 F.3d 1099, 1104 n. 6 (9th Cir.2002) (stating in *dicta* that plaintiff's § 1983 claim challenging constitutionality of State Bar statutes and one state rule of professional conduct probably was not barred under *Rooker–Feldman* because his complaint did not request review of a stayed suspension to which he stipulated with the State Bar or his probationary sentence, and sought only prospective relief). Because Silva's complaint does not seek review of a specific state court decision, it will not be dismissed under *Rooker–Feldman*.

## D. Standing

Although Silva's complaint cures the *Rooker–Feldman* problem spelled out by this Court in its order dismissing the related *LACAEHS* complaint, the "cure" causes him to fail to establish standing to seek injunctive relief.

Article III requires that "federal courts take jurisdiction only over 'definite and concrete, not hypothetical or abstract' cases and controversies." *Id.* at 1107 (quoting *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir.2000) (en banc)). "A plaintiff generally demonstrates standing by showing an injury in fact traceable to the challenged action and redressable by a favor-

able decision." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). "In the particular context of injunctive and declaratory relief, a plaintiff must show that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Id.* (citations and internal quotation marks omitted).

Silva purports to describe the injury he has suffered in paragraph thirty-one of his complaint. In that paragraph, Silva conclusorily alleges that he was "illegally injured" by the County paying Superior Court judges local judicial benefits and by all defendants failing generally to disclose this fact. Silva does not, however, allege how these practices specifically injured him, and he also fails to allege that he is threatened with the likelihood that the injury (whatever it may be) will be repeated in the future.

 An undifferentiated interest shared with the public at large in the proper application of the Constitution or other laws is not sufficient to show standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 106, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("vindication of the rule of law" insufficient for Article III standing). Silva, therefore, cannot demonstrate standing by alleging merely that he was and will be injured by the allegedly unconstitutional practice of the County's payment of local judicial benefits to Superior Court judges and the judges' failure to disclose such payment. This simply is not a "concrete" injury.

Silva also has failed to allege how the Defendants' alleged practices subject him to an immediate threat of future harm. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999) ("To have standing to seek injunctive relief, [plaintiff] must demonstrate a real or immediate threat that defendants will again subject him to [the harm complained of.]"). Therefore, he does not have standing to pursue injunctive relief.

Moreover, assuming that the harm Silva suffered was that state judges were biased in favor of the County in his state case (Silva does not explicitly allege this), Silva's request for injunctive relief fails because he had (and has) an adequate remedy at law. The California Code of Civil Procedure (sections 170.1, *et seq.*), sets forth judicial disqualification procedures that Silva could have (and still can) use if he believes that a judge is biased. In fact, the record demonstrates that in his state court proceeding Silva attempted to invoke these procedures, but was barred from doing so because he failed to file a timely challenge to Judge Chalfant. Alternatively, Silva could have (and can) move to transfer venue under Cal.Code Civ. Pro. §§ 384 and 397.

Silva's Opposition to Defendants' motions contains two short paragraphs (with no case citations) responding to Defendants' standing argument. The Opposition states that Silva "has a present claim against LA County for the return of child support monies which were wrongly taken from him. This is a current claim based upon the reversal of the back child support order in his divorce case marked as Exhibit 4 and attached hereto and incorporated herein as if set forth in full." Opposition at 11.

Exhibit 4 is an order in *Silva and Silva v. Silva*, Case No. NVD0002301, an unrelated state case between Silva and his ex-wife, in which the County is not a named party. Moreover, Silva was the prevailing party in that state court action, and Silva does not explain how he suffered an injury in that case. During the hearing on this motion, Silva's attorney, Mr. Fine, represented that the County is a party to Silva's

action to recover back child support. After the Court questioned Mr. Fine extensively, he admitted that: (1) he does not represent Silva in this case; (2) Silva has not sought a writ of mandate against the County to recover the back child support he allegedly is owed; and (3) the County is not a party to that action.

Moreover, Silva does not refer to this supposed "present claim against LA County" in his complaint, and, even if he did, it is unclear how this claim could confer standing for him to proceed in this case. Silva does not state in his Opposition that his "present claim" is before a judge who receives local judicial benefits. Even if his "present claim" is before such a judge, Silva has an adequate remedy at law. As shown above, he may invoke the judicial disqualification procedures set forth in Cal. Code Civ. Pro. §§ 170.1, *et seq.*, or he may move to transfer venue under Cal.Code Civ. Pro. §§ 384 and 397. Mr. Fine also did not establish a clear and present connection between Silva's child support action and any of the Defendants named here, let alone a defendant in the putative defendant class. These facts further support the Court's conclusion that Silva does not have standing to seek injunctive relief.

In sum, Silva has alleged neither Article III standing nor standing to seek injunctive relief. On this ground alone, Defendants' motion to dismiss is GRANTED. Injunctive relief simply is not appropriate because Silva has an adequate remedy at law even assuming he could amend his complaint to allege that the judge presiding over his "present claim" (in *Silva and Silva v. Silva*) is biased because he or she receives local judicial benefits from the County. Therefore, it appears that the standing defect cannot be cured by amendment. Accordingly, Silva's complaint is dismissed WITH PREJUDICE.

### E. Failure to State a Claim

■ The ostensible gravamen of Silva's complaint is that the County's payment of local judicial benefits to Superior Court judges violates due process because it potentially biases the judges in cases in which the County is a party.[6] Even assuming all of the facts in Silva's complaint are true, those facts simply do not establish a due process violation.

The California Supreme Court recently decided *Lolley v. Campbell*, 28 Cal.4th 367, 121 Cal.Rptr.2d 571, 48 P.3d 1128 (Cal. 2002), which bears directly on this case. In *Lolley*, an employee represented himself during an administrative hearing before the Labor Commissioner, after which the Labor Commissioner awarded him $27,216.14 in unpaid overtime wages, penalties and interest. The employer appealed the award to the superior court, and the Labor Commissioner agreed to represent the employee on appeal (as authorized by state law) so long as the employee agreed to assign him any attorneys' fees he received. The superior court held a hearing de novo and again awarded damages to the employee. The employee then sought attorneys' fees.

---

**6.** Silva also alleges that this practice violates equal protection and denies him access to the courts, but those contentions are not serious. In his Opposition, Silva does not explain the basis for his equal protection and access to the courts claims, and cites no case law in support of these claims. Moreover, to the extent Silva attempts to identify the relief he specifically seeks from the judges, it is merely that they disclose the "local judicial benefits" they receive. Given that he already knows of these benefits (which are publicly disclosed in any event) that relief would not provide him with a remedy that he arguably lacks; *all* the Superior Court judges are entitled to the benefits and if a Court of Appeals justice previously sat on the Superior Court and thereby received the payments, that, too, would be a matter of public record.

In the California Supreme Court, the employer argued that awarding fees to the Labor Commissioner deprived him of due process because it gave the commissioner " 'a pecuniary interest in the case, thus denying the employer an impartial and fair hearing before the Labor Commissioner.' " *Id.* at 579, 48 P.3d 1128. The California Supreme Court rejected the employer's due process challenge because he had not demonstrated that the commissioner had " 'a direct, personal, substantial, pecuniary interest' " in the case. *Id.* (quoting *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). The Court contrasted the case with *Tumey,* "which found a violation of due process where the defendant was tried by the mayor of a village for violating the Prohibition Act, because the mayor's fees for acting in this capacity were paid by fines collected from the defendant. The mayor would be paid for his services as a judge only if he found the defendant guilty." *Id.* at 579–80, 48 P.3d 1128.

The facts alleged in Silva's complaint are even less consistent with a due process violation than the facts in *Lolley.* There, the Labor Commissioner had an indirect incentive to award damages to the employee, because the employer might appeal such a ruling, thereby creating the possibility that he could later collect attorneys' fees. Had the Labor Commissioner ruled in the employer's favor, he would have destroyed the possibility of his later recovering attorneys' fees. Nonetheless, the California Supreme Court decided that the monetary incentive to rule in favor of the employee was too indirect and insubstantial to raise the specter of potential bias.

Here, the County pays local judicial benefits to Superior Court judges regardless of the outcome of any particular case, and thus there is no incentive for a Superior Court judge to rule in the County's favor.

Silva argues that "[t]he direct pecuniary benefit is clear. The judges and court commissioners are receiving monies directly from a party or prospective party in a case before them. Here the violation is more direct than *Tunney* [sic] [Tumey] *v. Ohio[,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)] . . . where the mayor was only paid from the fines of the defendant. Here the judges and court commissioners are 'pre-paid' and 'currently paid' ensuring the possibility and probability of 'favorable treatment.' The justices with such knowledge act in concert with them in not disclosing." Sur Opposition at 3.[7]

This argument misses the mark. The mayor in *Tumey* had a clear financial incentive to find a defendant guilty—he would not get paid otherwise. Even the Labor Commissioner in *Lolley* had an indirect incentive to award damages to the employee. Here, the Superior Court judges are paid regardless of the outcome in a case involving the County. *Cf. Dugan v. Ohio,* 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928) (no due process violation where mayor-judge received salary "paid out of a fund to which fines accumulated from his court under all laws contribute" because "he receives a salary in any event, whether he convicts or acquits"). Here, as in *Dugan,* "[t]here is no reason to infer on any showing that failure" to rule in favor of the County "would deprive [Superior Court judges] of or affect [their] fixed compensation." *Id.* at 65, 48 S.Ct. 439.

During oral argument, Silva's counsel, Mr. Fine argued that because the County's payment of local judicial benefits to Superior Court judges is voluntary, the County could stop making such payments at any time. The possibility that the County may withhold these benefits, Mr. Fine argued, constitutes a "direct, personal, substantial, pecuniary interest" in the case, and there-

7. Defendants' objections to the Sur Opposi- tion are hereby overruled.

fore rises to the level of a due process violation in cases involving the County as a party. Of such fanciful speculations due process rights are not created.

The Court need not decide the disputed issue whether the County's payment of benefits is voluntary or mandatory to hold that Silva has not stated a due process violation. Silva simply has not demonstrated a realistic, immediate possibility that the County will stop paying local judicial benefits to Superior Court judges if they render decisions unfavorable to the County. *Cf. Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 824, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (due process violated where a Justice's "opinion for the Alabama Supreme Court had the *clear* and *immediate* effect of enhancing both the legal status and the settlement value of" a lawsuit he had filed in his own behalf that involved precisely the same questions) (emphasis added). In short, Silva has not established that the judges have a pecuniary interest, direct or otherwise, in the outcome of cases in which the County is a party.

Silva's complaint fails to state a claim for a due process or any other constitutional violation. Therefore, on this alternative ground, Defendants' motions are GRANTED with prejudice.

### F. Sanctions

The Court declines to order Mr. Fine to show cause why he should not be sanctioned under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. But the Court is constrained to note that this is the second time that Mr. Fine has used his "local judicial benefits" theory to file an ill-conceived and meritless complaint against state judges who have ruled against his client or him in state court proceedings. Although the complaint styles the suit as a defendant class action, the particular state

judges or judicial officers who are singled out and named in the caption all issued rulings that are unfavorable to Mr. Fine. This suggests to the Court that the purpose of the complaint is not to vindicate Mr. Fine's client's interests, but rather to punish judges who have ruled against him. This vindictiveness is particularly egregious in the case of Commissioner Mitchell, who is not alleged to have had anything to do with the *Silva v. Garcetti* lawsuit. Moreover, the defendant-Court of Appeal Justices do not even *receive* local judicial benefits. If Mr. Fine contemplates filing another complaint in federal court attacking the next state court judge who rules against him, he is on notice that the Court has inherent authority to impose sanctions in the amount spent by the Defendants in filing meritorious motions to dismiss. *See Fink v. Gomez,* 239 F.3d 989, 991–92 (9th Cir.2001) (holding that sanctions may be imposed under the court's inherent authority for "bad faith" actions by counsel).

### IV.

### CONCLUSION

Good cause appearing therefor, Defendants' motions to dismiss [8] are GRANTED with prejudice.

IT IS SO ORDERED.

---

**8.** Docket numbers 8 & 10.