Filed 9/24/20  Marriage of J.K. & M.H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of J.K. and M.H. | D075901 |
| J.K., | |
| Respondent, | |
| v. | (Super. Ct. No. DN175191) |
| M.H., | |
| Appellant, | |
| SAN DIEGO COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County,

Pennie K. McLaughlin, Commissioner.  Affirmed.

M.H., in pro. per., for Appellant.

No appearance for Respondent J.K.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney

General, Linda M. Gonzalez and Ricardo Enriquez, Deputy Attorneys

General, for Respondent San Diego County Department of Child Support Services.

M.H. (Father) appeals an order determining child support arrears and setting an escalating monthly arrears payment schedule. He challenges both the order itself and numerous aspects of the six-year litigation preceding it. Many of Father's challenges are not cognizable in this appeal because the alleged errors occurred long ago. As to the challenges that are properly before us, we conclude Father has failed to show any prejudicial error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother were married, had one son, and divorced. Their 2007 judgment of divorce, entered in Michigan, directed Father to pay Mother child support "as previously ordered" for three years, at which time the amount would be reviewed. Five years later, a Michigan court granted Mother's motion to change her residence to Oceanside, California. Mother relocated to Oceanside, and Father moved to California as well.

Mother registered the Michigan divorce judgment with the trial court and requested changes to visitation and child support. In a supporting declaration, Mother alleged that the existing Michigan visitation order allowed their son to spend his summer vacation with Father. She argued that Father's move to California was a significant change in circumstances requiring review of the visitation order. As to child support, Mother wrote, "I am requesting that the Court order guideline child support." The existing Michigan child support order was for $361 monthly. Mother also requested an order directing Father to make payments on a student loan, reimburse her for their son's medical expenses, and to allow their son to continue therapy with a different therapist.

2

In an interim order, the court ordered child support of $572 monthly and retained jurisdiction "over all outstanding issues."  It found the financial documentation submitted by Father to be "unhelpful" and ordered Father to file a proper income and expense declaration within 30 days.  It also ordered the parties to meet and confer regarding a therapist.

After further hearings, the court appointed an expert to examine Father's business income.  It continued to reserve jurisdiction over all remaining issues.  Four months later, it ordered Father to provide the expert with his banking records by a date certain.  The special master later died, which appeared to cause further delays.

Eighteen months after Mother's request to modify the Michigan judgment, the court made findings regarding Father's monthly income and custody timeshare for various periods.  It directed Mother's attorney to calculate guideline child support based on the court's findings for those periods using "DissoMaster."[1]

Another year later, the court used those figures to determine Father's child support arrears.  It directed Father to make a monthly arrears payment of $200, until modified by further court order.  It appears that Father had requested a reduction of his regular monthly child support payments.  Because the court was concerned about the accuracy of Father's current financial documents, the court did not make any further child support orders.  Instead, it ordered Father to participate in a vocational evaluation.  The court's order included the standard notation, "All orders not in conflict with the foregoing shall remain in full force and effect."  Father did not participate

---

[1]     "DissoMaster is a computer software program widely used by courts to set child support and temporary spousal support." (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1578, fn. 4.)

3

in the vocational evaluation, so the court ordered his request to modify child support off-calendar. It again included the standard notation regarding prior orders.

The court made a further order calculating arrears and, later, ordered Father to make monthly arrears payments of $500. It ordered Father to file an updated income and expense declaration. In its final order, it stated, "The Court confirmed child support is as previously ordered."[2]

In October 2017, Father applied ex parte to obtain an order "to release the funds frozen in my wife's checking account and our son's savings account." The court denied the ex parte application. It wrote, "[Father] is told that [the Department of Child Support Services] has jurisdiction [regarding] this issue." (See Fam. Code, § 4251.)

The next year, Father sought an order resetting his previous request to reduce child support or, in the alternative, an order terminating child support altogether. He argued he had been ill-served by his prior counsel and no child support should be required of parents who provide "the basic necessities of life" to their children. Mother opposed the motion and contended that Father "still refuses to provide accurate income information for the Court to meaningfully decide any request for modification of child support." She again requested that he complete a vocational evaluation. Mother also requested that the court confirm its existing orders regarding child support and arrears payments. In a declaration, Mother stated "[t]he last and still current child support order was in the amount of $547" monthly.

---

2    Father appealed the final arrears order, and this court affirmed the order in an unpublished opinion. (*In re Marriage of J.K. and M.H.* (Dec. 8, 2017, D072075).) Our unpublished opinion provides additional details regarding these proceedings.

4

At the next hearing, the parties discussed the court's previous orders regarding child support. The court initially expressed its understanding that the current order for child support was $572 monthly, but with Mother's agreement it determined the figure was in fact $547 monthly because it was the last value calculated by the court in determining arrears. The court rejected Father's claim that he should not pay any child support. Father asked the commissioner presiding in court to recuse herself. The court refused. After a recess, the parties agreed to a new, nonguideline child support payment of $400 monthly going forward. The court ordered arrears payments of $200 monthly as well. The court confirmed that Father's driver license and real estate license had been released from suspension, subject to review at future hearings.

Two months later, Mother requested a revised payment plan on arrears. She calculated that it would take 11 years to repay the arrears in full at the current monthly payment of $200. The court ordered the County of San Diego Department of Child Support Services (DCSS) to conduct an audit of past obligations and payments to settle the question of Father's outstanding arrears. It rejected Father's contention that the $400 stipulated child support payment should be retroactive to 2015.

Before the next hearing, Father filed a declaration contending that the court's child support orders, especially its imposition of interest on any arrears, violated the Uniform Interstate Family Support Act (UIFSA; Fam. Code, § 5700.101 et seq.) because Mother's initial request for registration of the Michigan judgment did not specify any grounds to modify the Michigan child support order. Father reiterated his request that the commissioner presiding in court recuse herself. He argued that two-thirds of California's funding for commissioner salaries came from the federal

5

government based on the state's child support orders. He claimed the commissioner was financially interested in the matter based on this funding scheme. Father also raised various allegations against his prior counsel.

At the hearing, the court confirmed the parties had received DCSS's audit. The parties again reviewed the history of the court's child support orders. Father argued that the court's first, interim child support order did not modify the Michigan judgment, but the court did not agree. On the audit, Father requested an additional payment credit of $42. Mother did not object, so it was included in the accounting. The court determined that Father owed approximately $22,000 in arrears and $7,500 in interest. Father objected to the imposition of interest, but the court explained that the California child support order accrued interest, regardless of Michigan law. Mother raised the issue of a "more reasonable" payment plan on arrears. After discussion, the court ordered escalating monthly arrears payments from $200 to $250 to $400. Father appeals.

## DISCUSSION

### I

*Standards of Appellate Briefing and Review*

Father represents himself in this appeal, as he did during most of the challenged portions of the trial court proceedings. "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.] Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) These rules include general prohibitions on raising arguments for the first time on appeal (*In re Marriage of Crosby & Grooms* (2004) 116 Cal.App.4th

6

201, 212) or in a reply brief (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477-1478 (*Khera & Sameer*)).  We will not consider arguments that run afoul of these rules, including numerous new arguments in Father's reply brief.

Substantively, the appealed order is presumed correct, and any error must be affirmatively shown.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  " 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' "  (*Ibid.*)  "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error.  [Citations.]  When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' "  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*).)  "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.  The court is not required to make an independent, unassisted study of the record in search of error.  The point is treated as waived and we pass it without further consideration."  (*Dept. of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)  " 'We are not bound to develop appellants' arguments for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

## II

### *Augmentation and Judicial Notice*

Father has filed three unopposed motions to augment the record. (Cal. Rules of Court, rule 8.155.)  We previously granted the first motion, filed October 15, 2019.  We now grant the second and third motions, filed April 30, 2020, and June 2, 2020.  The documents attached to the motions to augment are deemed part of the record on appeal.

Father has also filed four motions for judicial notice, covering numerous documents.  (Evid. Code, § 459.)  Several requests cover documents filed in the trial court.  We treat these requests as motions to augment the record and grant them.  The documents identified by Father as Attachments A, B, N, O, and R are deemed part of the record on appeal. (Father's request for judicial notice of a reporter's transcript is denied because it is already part of the record, as augmented.)

Several other requests cover the California Constitution and various California statutes.  Though a formal request is unnecessary, we grant these requests.  (Evid. Code, § 451, subd. (a).)  We likewise grant Father's requests for judicial notice of his Exhibit 28, Canons 2 and 3 of the California Code of Judicial Ethics (*id.*, § 451, subd. (c)), and his Attachments AA and EE, Ethics Opinion Nos. 59 and 76 published by the California Judges Association (see Cal. Law Revision Com. com., Deering's Ann. Evid. Code (2020 ed.) foll. § 450 [courts may consult "discussions by learned writers" in formulating rules of law].)  For the same reason, we grant judicial notice of his Attachments W and X, the text of the 1996 and 2008 versions of the UIFSA and related commentary.  We also grant Father's requests for judicial notice of the existence and content of various official explanatory materials and statistics regarding California's child support program and the federal role in funding

8

it, identified as Attachments P, Q, V, Y, and Z, though we do not take judicial notice of their truth. (Evid. Code, § 452, subd. (c); *People v. Castillo* (2010) 49 Cal.4th 145, 157; *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063-1064 (*Mangini*).)

Father's requests for judicial notice of various federal court orders and appellate briefs are denied because they are irrelevant to any disputed issues properly before us. (*Mangini, supra,* 7 Cal.4th at p. 1063.) His requests for judicial notice of letters and emails from the DCSS and the Internal Revenue Service are likewise denied. Even assuming they are official acts of the state and federal executive branches (Evid. Code, § 452, subd. (c)), we can take judicial notice only of their existence and content, not the truth of any matters stated therein. Because these documents are relevant (if at all) only for their truth, judicial notice is inappropriate. (See *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.) We deny judicial notice of Father's real estate license record and a DCSS child support guideline calculation for the same reasons. (*Ibid.*)

Father also requests judicial notice of his own correspondence with DCSS, and correspondence between Father and his attorneys. We deny those requests because Father has not shown that these documents are the proper subjects of judicial notice. (See *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154.) We deny judicial notice of the child support guideline calculations created by Father for the same reason. (See *ibid.*)

### III

### *Judicial Bias*

Father contends the commissioner presiding in court erred by declining to recuse herself for bias. He claims that two-thirds of California's funding

9

for child support commissioners ultimately comes from the federal government, based on California's child support orders. He argues the court had a financial interest in ordering substantial child support based on this funding scheme. Even accepting Father's characterization of these federal funds, we conclude Father has not shown the court had a financial interest in the proceedings that would require it to recuse itself.

Father relies primarily on *Tumey v. Ohio* (1927) 273 U.S. 510 (*Tumey*). In *Tumey*, the U.S. Supreme Court considered an Ohio statute that empowered a village mayor to try defendants accused of violating Ohio's alcohol prohibition laws. (*Id*. at p. 514.) As compensation, a mayor was allowed to retain any legal fees paid. (*Id*. at p. 520.) "But no fees or costs in such cases are paid him except by the defendant if convicted. There is, therefore, no way by which the Mayor may be paid for his service as judge, if he does not convict those who are brought before him . . . ." (*Ibid*.)

The Supreme Court held that the prospect of such fees resulted in an unfair proceeding that violated a defendant's constitutional right to due process. "[I]t certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." (*Tumey*, *supra*, 273 U.S. at p. 523.) "We cannot regard the prospect of receipt or loss of [the mayor's] emolument in each case as a minute, remote, trifling, or insignificant interest. It is certainly not [fair] to each defendant, brought before the Mayor for the careful and judicial consideration of his guilt or innocence, that the prospect of such a loss by the Mayor should weigh against his acquittal." (*Id*. at p. 532.) Moreover, any fines imposed were received in part by the village and used to pay officials to enforce the

10

prohibition laws. (*Id*. at pp. 517, 520.) This funding scheme provided additional incentive to a mayor to convict: "The mayor is the chief executive of the village. He supervises all the other executive officers. . . . With his interest, as mayor, in the financial condition of the village, and his responsibility therefor, might not a defendant with reason say that he feared he could not get a fair trial or a fair sentence from one who would have so strong a motive to help his village by conviction and a heavy fine?" (*Id*. at p. 533.)

Our Supreme Court reached a similar conclusion in *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, which considered a due process challenge to the financial interest of temporary administrative hearing officers. The County of San Bernardino adopted a practice of selecting hearing officers "on an ad hoc basis and paying them according to the duration or amount of work performed." (*Id*. at p. 1020.) The Supreme Court agreed with the plaintiff that this practice gave hearing officers "an impermissible financial interest in the outcome of the cases they are appointed to decide, because the officers' prospects for obtaining future ad hoc appointments depend solely on the county's goodwill and because the county, in making such appointments, may prefer those officers whose past decisions have favored the county." (*Ibid*., fn. omitted.)

Father has not shown the court commissioner here has a similar direct, personal, substantial financial interest in ordering child support. Court commissioners are appointed by each superior court and receive no other compensation other than as a court commissioner. (Fam. Code, §§ 4251, subd. (b), 4252, subd. (a).) Father has not shown that a court commissioner's compensation or her continued employment depends on the child support ordered. The general relationship between child support and federal funding

11

is too indirect and remote to constitute a financial interest in any specific case or outcome. (See *Lolley v. Campbell* (2002) 28 Cal.4th 367, 379 [holding that the prospect of attorney fees if a state hearing officer ruled against defendant, and was successful on appeal to the superior court, was not a substantial financial interest]; *Silva v. County of Los Angeles* (C.D.Cal. 2002) 215 F.Supp.2d 1079, 1087 [holding that county-provided judicial benefits were not a substantial financial interest requiring disqualification of superior court judges in matters involving the county]; see also *Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 250 [describing potential financial interest as "exceptionally remote" where the government official would not profit economically].) Father's arguments to the contrary are unpersuasive.

IV

*Child Support Arrears*

Father challenges the court's determination of child support arrears on several grounds. We address each in turn.

First, Father contends the court should have used the amount awarded in the Michigan child support order ($361 monthly) as the applicable child support figure in calculating arrears from the date of the registration of the Michigan judgment in California through the date he and Mother agreed to set child support at $400 per month (or, alternatively, it should have used $400 monthly for the whole period). The basis for Father's contention is the court's alleged error under the UIFSA by modifying the Michigan judgment in the absence of a statement of grounds for modification in Mother's request for modification. Under the UIFSA, if a party registering an out-of-state child support order requests modification of that order, the modification request "must specify the grounds for modification." (Fam. Code, § 5700.609.) We conclude any error in the court's initial child support order is

12

unreviewable in this appeal.  The initial child support order was an appealable order.  (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906.)  The time to appeal the order expired long ago.  (See Cal. Rules of Court, rule 8.104(a).)  We therefore lack appellate jurisdiction to review it.  (See *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 (*Van Beurden*); see also *In re Marriage of Spector* (2018) 24 Cal.App.5th 201, 208.)[3]

Relatedly, Father argues the initial California child support order was invalid because it did not specifically state it was modifying the Michigan judgment.  Even setting aside the question of reviewability, Father's argument fails because there is no requirement for such a statement under the UIFSA.  (See Fam. Code, § 5700.613.)  Father relies on authorities interpreting UIFSA's predecessor.  (See, e.g., *In re Marriage of Gerkin* (2008) 161 Cal.App.4th 604, 612.)  These authorities no longer apply.  He also relies on the official comments to the UIFSA, which state that it would be "good practice" for the new court to explicitly state it is assuming responsibility for the child support order.  These are comments on Family Code section 5700.611, rather than section 5700.613.  The latter statute is applicable here because the parties all resided in California at the time of the

---

[3]     In his opening brief, Father appeared to contend that this error left the trial court without jurisdiction to order child support.  In his reply brief, however, Father disclaims any such jurisdictional argument.  He maintains the court simply erred under the UIFSA.  While we need not consider the issue in light of this disclaimer, the trial court clearly had jurisdiction because it is undisputed that Father, Mother, and their son all resided in California.  (See Fam. Code, § 5700.613, subd. (a).)

order. And, in any event, the comment's suggestion regarding "good practice" does not mean that its omission is an error requiring reversal.[4]

Second, Father argues that the court lacked statutory authority to order child support because he has joint custody of his son and therefore cannot be a "noncustodial" parent. We addressed and rejected that argument in our prior opinion. Our conclusion is now law of the case; we will not reconsider it here. (See *City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 491-492.)

Third, Father argues that California's child support statutes, or the order at issue here, are unconstitutional on various grounds. None of Father's arguments has merit. He claims the statutes are unconstitutionally vague (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1373-1374), but he does not analyze the statutes themselves. His claim relies on the trial court's alleged uncertainty regarding the amount of past support orders. Any such uncertainty does not show the statutes themselves are unconstitutionally vague. Father also claims the child support order violates his substantive due process right to be free from government interference in the care, custody, and control of his son. He has not shown how a monetary payment to his former wife, for support of their son, infringes on the established parameters of that right. (See *Troxel v. Granville* (2000) 530 U.S. 57, 66.) Father's focus on his rights ignores the fact that joint custody is necessarily a shared endeavor, both financially and otherwise. (See generally Fam. Code,

_____

[4]    To the extent Father argues the court erred by not applying the $400 child support agreement retroactively, he has not provided any basis for finding error, especially in light of (1) our prior opinion affirming an earlier arrears order incorporating higher amounts and (2) the parties' agreement on the record that the $400 obligation was forward-looking. His claim that "there were no other child support orders made" before the $400 agreement ignores the court's initial, interim order.

14

§ 4053.)  The state has an interest in ensuring that children are protected and supported, especially where (as here) the parents did not agree on the amount of support.  (See *Tolces v. Trask* (1999) 76 Cal.App.4th 285, 291.)  We disagree that the state's role only arises where one or both parents rely on public assistance.  Father claims the child support orders violate the equal protection rights of divorced parents when compared with married parents.  But the state has a rational basis for distinguishing between divorced and married parents in imposing child support obligations, because the relationship between the parents in both situations is substantially different.  Father has not shown that divorced parents are a suspect class requiring any judicial scrutiny beyond that standard.  (See *Lyng v. Castillo* (1986) 477 U.S. 635, 638-639.)  Father's reliance on authorities considering equitable abatement of child support obligations incurred while a noncustodial parent provides custody is unavailing.  (See, e.g., *In re Marriage of Wilson* (2016) 4 Cal.App.5th 1011, 1016 [discussing the "*Jackson* rule" of equitable abatement].)  Joint custodial support obligations in California already account for a child's time in the physical custody of the parent incurring such obligations.  (See Fam. Code, § 4055, subd. (b)(1)(D).)  Father has not shown any constitutional violation.[5]

V

*Arrears Payments*

Father contends the trial court erred by ordering an escalating arrears payment schedule.  He claims he did not have prior notice that the court would increase his arrears payments and the order violated his right to

---

[5]    In his reply brief, for the first time, Father challenges the imposition of interest on his unpaid California arrears.  We do not consider arguments made for the first time on reply.  (*Khera & Sameer*, *supra*, 206 Cal.App.4th at pp. 1477-1478.)

15

procedural due process. DCSS argues that Father forfeited this claim of error by failing to object in the trial court. (See *Pacific Standard Life Ins. Co. v. Tower Industries, Inc.* (1992) 9 Cal.App.4th 1881, 1888.) Even setting aside forfeiture, Father's contention fails on its merits.

"It is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given proper notice and an opportunity to defend." (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166; see *In re Marriage of O'Connell* (1992) 8 Cal.App.4th 565, 574.) Here, contrary to Father's claim, Mother provided notice that she would seek to increase Father's arrears payments. In a declaration, Mother calculated Father's child support arrears and the length of time it would take for repayment on the existing schedule. In conclusion, she wrote, "I am therefore requesting an increase in the monthly amount paid towards arrears to facilitate a more expedited repayment of the arrears." Moreover, as DCSS notes, the court had the power to impose conditions, such as increased payments, in granting Father's request that his real estate license be released from suspension. (See Fam. Code, § 17520, subd. (k)(4)(C).)

VI

*Miscellaneous Issues*

Father claims the court erred by denying his ex parte application to rescind DCSS's levy on his family's bank account. We have no jurisdiction to consider this order because Father did not identify this order in his notice of appeal (see *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 504 (*Dakota Payphone*)) and, even if he had, his notice of appeal would be untimely as to this order (see Cal. Rules of Court, rule 8.104; *Van Beurden, supra*, 15 Cal.4th at p. 56). In any event, we note, contrary to Father's claim, that "[a] court order authorizing such a levy is not required. The levy is

16

founded on an existing support order, overdue support, and the existence of an order by operation of law requiring payment of support arrears." (*In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 819.)

Father makes various claims of incompetence and malfeasance against his former attorneys. Any claims Father may want to assert against his former attorneys are not at issue in this appeal, which concerns his child support obligations and arrears. To the extent his claims touch on the order under review in this appeal, he has not provided any factual or legal basis for reversing the order based on any attorney incompetence or malfeasance. (See *S.C.*, *supra*, 138 Cal.App.4th at p. 408; see also *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 686-687.)

Father argues various other aspects of the underlying proceedings were erroneous or unfair, including an order regarding therapy for his son and another order regarding visitation. To the extent we can discern Father's contentions, we have no appellate jurisdiction to review these orders, which occurred several years ago. (See *Van Beurden*, *supra*, 15 Cal.4th at p. 56; *Dakota Payphone*, *supra*, 192 Cal.App.4th at p. 504.)

DISPOSITION

The order is affirmed.


GUERRERO, J.

WE CONCUR:



HALLER, Acting P. J.



AARON, J.